**[J-81-2018] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 7 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered June 5, 2017 at No. |
| | : | 1445 WDA 2016, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered August 31, 2016 at No. CP- |
| EDWARD THOMAS ADAMS, | : | 02-CR-0002870-2016. |
| | : | |
| Appellant | : | ARGUED:  October 24, 2018 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE MUNDY**                          **DECIDED:  MARCH 26, 2019**

I agree with the Majority that Appellant was seized for Fourth Amendment purposes when Officer Falconio would not permit him to exit his vehicle.  Majority Op. at 9.  I further agree that Officer Falconio needed to articulate reasonable suspicion for the seizure to be constitutionally reasonable under the Fourth Amendment.   However, because I conclude that Officer Falconio articulated the required reasonable suspicion, I respectfully dissent.

At the suppression hearing, Officer Falconio testified that he was a patrolman for the Borough of Pleasant Hills, and his duties included responding to 911 calls, proactive policing, DUI enforcement, and business checks in the district.  N.T., 8/25/16, at 3-4.  On January 10, 2016, Officer Falconio was working the night shift when he witnessed a white Dodge Dart turn into a parking lot for Toby Tyler, a train hobby store, and Showcase Pizza.  He testified his attention was drawn to the vehicle because it was 2:56 a.m. and both businesses were closed.  *Id.* at 5.  Officer Falconio testified he drove in the direction

of the parking lot keeping an eye on the building for the vehicle to see if it would reemerge from behind the building. When the vehicle did not exit he pulled behind the building "to see what the occupant or occupants of the vehicle was [sic] doing." *Id.* at 6.

Officer Falconio articulated, "I wasn't conducting a traffic stop. I didn't put my emergency lights on. I was simply checking to see why a car drove behind two dark, closed businesses at 3 o'clock in the morning, making sure there wasn't drug activity or an attempted burglary of the pizza shop . . . or the hobby shop[.]" *Id.* at 9. Based on these suspicions Officer Falconio approached the vehicle, noted the lights and engine of the car he had just observed driving into the lot were now off, and knocked on the driver's window. When Appellant attempted to exit the vehicle, Officer Falconio, fearing for his safety, pushed the door shut and requested Appellant roll down the window. *Id.* at 7, 24.

At this juncture, it is undisputed Appellant was seized, and in my view, legally seized. This Court granted review "to determine whether the courts below erred in concluding the interaction between [Appellant] and Officer Falconio did not ripen into an investigative detention prior to the officer detecting indicia of intoxication." Majority Op. at 6. Like the Majority, I am in agreement that the interaction ripened into an investigative detention prior to Officer Falconio detecting indicia of intoxication, but I would conclude it was supported by reasonable suspicion. Thus, as the Majority notes, we review this issue "mindful that the trial court's findings of facts are binding upon us to the extent they have record support, but we conduct a de novo review of its legal conclusions." *Id.* (citing *Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018).

In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court reviewed the level of suspicion an officer needed to have in order to stop and frisk an individual. In *Terry*, Officer McFadden observed two individuals walk from a corner down to a store, peer in the window, and return to the corner at least a dozen times. *Id.* at 5. Officer

McFadden became suspicious and continued to watch the individuals. He eventually observed a third individual approach the pair, and all three head in the same direction, stopping in front of a store window. *Id.* At that point in time, Officer McFadden feared the individuals might intend to hold up the store, and determined "the situation was ripe for direct action[.]" *Id.* Officer McFadden approached the individuals and out of fear they were armed, frisked Terry for a weapon. In its opinion, the United States Supreme Court reviewed Officer McFadden's stop and frisk of Terry and noted "in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19-20. The Court continued, "we deal here with an entire rubric of police conduct— necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Id.* at 20. From there the Court held, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. This Court has since repeatedly held "an investigative detention, derives from *Terry v. Ohio* and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Smith*, 836 A.2d 5, 10 (Pa. 2003).

Instantly, Officer Falconio articulated that while on patrol he observed a vehicle pull into a parking lot of two closed businesses at 3 a.m., and disappear behind the

building. Officer Falconio waited for the vehicle to reemerge as it was possible the vehicle had inadvertently entered the parking lot. When the vehicle did not reemerge, Officer Falconio drove behind the businesses and observed the car and its lights were off. Officer Falconio continued the investigation of the suspicious vehicle to determine if an attempted burglary or drug deal was taking place. When Officer Falconio approached the car, the occupant attempted to exit the vehicle. Fearing for his safety, Officer Falconio pushed the door shut and asked the occupant in the vehicle to remain in the car until backup arrived, which occurred one minute later.

Officer Falconio's testimony articulated specific facts, which taken together with the rational inferences from those facts, supported Officer Falconio's action of temporarily seizing Appellant. Specifically, the record evidence supports the conclusion that Officer Falconio had reasonable suspicion that criminal activity was afoot. Upon approaching the vehicle for closer observation, the sole occupant attempted to exit the vehicle to confront Officer Falconio. Due to safety concerns, Officer Falconio seized Appellant by pushing the door of the vehicle closed until backup arrived giving rise to the investigative detention of Appellant. At the time of the seizure, Officer Falconio had not yet spoken with Appellant, and did not know Appellant was the owner of the business, nor did he know Appellant could not open the window because the keys were in the backseat of the vehicle. Officer Falconio's subsequent observations of Appellant's conduct and demeanor led to the observation that he was driving under the influence, but bore no impact on his initial seizure of Appellant.

The situation in this case unfolded fluidly and at a rapid pace. This Court and the courts below have the benefit of hindsight and the advantage of dissecting the interaction step by step as it unraveled via the testimony of Officer Falconio. It is important, in my view, to recognize the split second decisions of police officers in these scenarios and the

need to deescalate unnecessary confrontations while not infringing on an individual's Fourth Amendment right to be free from unnecessary searches and seizures. Accordingly, because I would affirm the Superior Court's holding, affirming the trial court's denial of Appellant's motion to suppress, I respectfully dissent.

Chief Justice Saylor joins this concurring and dissenting opinion.